Joseph MIDGETT, Plaintiff–Appellant,

v.

TRI–COUNTY METROPOLITAN TRANSPORTATION DISTRICT OF OREGON, Defendant–Appellee.

No. 99–36222.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 7, 2001

Filed June 26, 2001

Shelley D. Russell, Crispin & Associates, Portland, Oregon, for the plaintiff-appellant.

Jeffrey M. Batchelor, Jeffrey M. Batchelor, P.C., Portland, Oregon, for the defendant-appellee.

Before: T.G. NELSON, GRABER, and RAWLINSON, Circuit Judges.

GRABER, Circuit Judge:

Plaintiff Joseph Midgett brought this action against Defendant Tri–County Metropolitan Transportation District of Oregon ("Tri–Met"), seeking a permanent injunction and compensatory damages for alleged violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 to 12213. The district court granted summary judgment to Tri–Met. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff has multiple sclerosis, relies on a wheelchair, and is a "qualified individual with a disability" under the ADA. 42 U.S.C. § 12131(2); *Midgett v. Tri–County Metro. Transp. Dist.*, 74 F.Supp.2d 1008, 1010 (D.Or.1999). Tri–Met, a transportation district, is a municipal corporation. *Griffin v. Tri–County Metro. Transp. Dist.*, 318 Or. 500, 870 P.2d 808, 809 (Or. 1994). It is a "public entity" subject to Title II of the ADA, 42 U.S.C. § 12131(1), and it operates a "fixed route system" that provides public transportation in metropolitan Portland, 42 U.S.C. § 12141(3). *Midgett*, 74 F.Supp.2d at 1010. Tri–Met operates more than 600 buses, providing approximately 300 million rides per year.

January 30, 1996, was an extremely cold day in Portland, and a bad day for both Plaintiff and Tri–Met. Plaintiff waited for a bus at his regular bus stop. When the bus stopped, the wheelchair lift proved inoperable because of the cold weather. Plaintiff went to another bus stop but, when the next bus stopped, its lift, too, failed to function.

Plaintiff went to a coffee shop to escape the cold and then decided to return home. On his way, he passed his regular stop, where another bus was waiting. The lift on that bus worked, and Plaintiff boarded, but the lift would not retract. The driver told the other passengers to take the next bus, which they did. Finally, the driver successfully retracted the lift and transported Plaintiff to work.

Plaintiff complained to Tri–Met's customer service department. He was unhappy with its response and filed this action against Tri–Met and Tom Walsh, Tri–Met's general manager, on January 30, 1998. In his complaint, Plaintiff alleged

violations of Title II of the ADA and brought a negligence claim under Oregon law. Plaintiff sought a permanent injunction compelling Tri–Met's compliance with the ADA, plus compensatory and punitive damages.

Tri–Met moved to dismiss. The district court granted the motion in part, dismissing Walsh as a defendant and striking Plaintiff's request for punitive damages. Tri–Met then moved for summary judgment. The parties entered a joint pretrial order in which Plaintiff limited his claim to money damages and alleged that his exposure to cold temperatures on January 30, 1996, exacerbated his multiple sclerosis. On February 24, 1999, the district court denied Tri–Met's motion for summary judgment.

On May 21, 1999, the district court permitted Plaintiff to withdraw his exacerbation claim and add a claim for injunctive relief. In his new claim, Plaintiff sought an expansive injunction compelling Tri–Met to develop a wide range of programs and procedures to ensure compliance with the ADA. Plaintiff asked for an order compelling Tri–Met to, among other things: revise its statistical procedures, require operators to maintain logs of all lift malfunctions, implement a system of cross-checking operator reports with customer reports of lift failures, implement disciplinary measures to punish an operator's failure to log a lift failure reported by a customer, post the number of failures weekly on the Tri–Met website, develop in conjunction with Plaintiff's counsel ways to measure improvement in lift service, develop new personnel training programs, provide a dedicated customer service line for lift-using Tri–Met riders, implement a back-up cold-weather transportation system for lift users, and develop a plan with Plaintiff's counsel for monitoring compliance with the injunction. Plaintiff requested that the injunction extend for a period of five years.[1]

Tri–Met again moved for summary judgment on the ADA claims. As evidence of the need for the requested measures, Plaintiff offered affidavits and declarations from himself and five other Tri–Met riders, each of whom uses the lift service.

Plaintiff's affidavit and declaration state that he experienced problems with Tri–Met's bus lifts on December 21, 1998; January 27, 1999; June 2, 1999; and September 29, 1999. Dianna Spielman's declaration states that, on July 18, 1999, the driver of her bus did not properly secure her wheelchair on the bus because the securement latch was not functioning. Ric Burger declares that an operator would not secure his chair on August 5, 1999. He further states that, on August 25, 1999, a low-floor bus did not stop properly, making the access ramp too steep for a wheelchair and that, on August 27, 1999, the operator failed to deploy the ramp properly. Patrick Rigert states that he estimates that he experiences lift failures about 10 times a year. Robert Pung, Sr., reports in his affidavit that he experienced lift failures approximately a dozen times in 1998 and that he has observed drivers exhibit poor attitudes toward lift-using passengers. Pung also identified one instance in 1995 in which a driver failed to secure his wheelchair properly. Richard McGhirk's declaration states that he has seen "significant improvement" in lift service, but that an estimated 1 in 20 drivers fails to secure his wheelchair properly.

---

1. Alternatively, in response to Tri–Met's motion for summary judgment, Plaintiff suggested that it would be appropriate for the district court to enter a narrower injunction compelling Tri–Met's compliance with the ADA, if the court concluded that the precise relief requested by Plaintiff was not warranted.

As evidence that Plaintiff's requested reforms are not needed, Tri–Met presented a Triennial Review prepared by the Federal Transit Administration ("FTA"), which found that Tri–Met was in compliance with the ADA in 1999. Tri–Met introduced an internal report studying lift failures for 1998, which showed that Tri–Met's lift performance exceeded that of transportation providers in the similar communities of Tacoma, Washington, and Eugene, Oregon. Tri–Met also presented extensive evidence showing that it has specific programs in place to address ADA issues, including a procedure for classifying ADA-related calls as "urgent," training programs to instruct officers how to address ADA-related issues, periodic quality control inspections by outside investigators, and specific practices related to lift failures. *See Midgett,* 74 F.Supp.2d at 1014–17 (summarizing Tri–Met's evidence). Plaintiff conceded that he could not controvert Tri–Met's evidence. *Id.* at 1017.

The district court held that Plaintiff had standing to request injunctive relief, but was not entitled to an injunction because his evidence did not establish a sufficient threat of ongoing ADA violations. *Id.* at 1013, 1018. The district court also reasoned that an injunction was not warranted because Tri–Met is a "state public entity," a fact that cautioned against the court's use of its equitable powers in the absence of a strong factual record demonstrating the threat of future ADA violations. *Id.* at 1013. The court concluded that Plaintiff was not entitled to compensatory damages because compensatory damages are not available under the ADA without a showing of an intentional violation, and Plaintiff's evidence did not support an inference of discriminatory intent. *Id.* at 1018. The court granted Tri–Met's motion for summary judgment and declined to exercise supplemental jurisdiction over Plaintiff's state law claim. *Id.* Ac-

cordingly, the district court entered a judgment of dismissal. This timely appeal followed.

## STANDARD OF REVIEW

■ We review a "summary judgment granting or denying a permanent injunction for abuse of discretion and application of the correct legal principles." *EEOC v. Goodyear Aerospace Corp.,* 813 F.2d 1539, 1544 (9th Cir.1987). Otherwise, we review de novo a grant of summary judgment. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995).

## DISCUSSION

Title 42 U.S.C. § 12132 provides:

Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

Title 42 U.S.C. § 12142 identifies certain practices by public-transportation providers that are considered discriminatory. In particular, it is discriminatory if a public entity that operates a fixed route system purchases a bus that is "not readily accessible to and usable by ... individuals who use wheelchairs." 42 U.S.C. § 12142(a). Moreover, the ADA deems it discriminatory for a public entity operating a fixed-route system to provide disabled individuals with services that are inferior to those provided to the nondisabled. 42 U.S.C. § 12143(a).

The regulations implementing the ADA do not contemplate perfect service for wheelchair-using bus commuters. Under certain circumstances, 49 C.F.R. § 37.163 permits buses with inoperative lifts in this type of service area to remain in service

for up to three days after the problem is discovered, and § 37.161(c) establishes that isolated or temporary problems caused by lift malfunctions are not violations of the ADA.

## A. *Denial of an Injunction*

■■■ Although, as discussed below, the district court misstated Plaintiff's burden in establishing entitlement to injunctive relief under the ADA, the court properly denied Plaintiff's request for a permanent injunction. In order to be entitled to an injunction, Plaintiff must make a showing that he faces a real or immediate threat of substantial or irreparable injury. *Hodgers–Durgin v. De La Vina,* 199 F.3d 1037, 1042 (9th Cir.1999). Moreover, because Plaintiff seeks to enjoin a government agency, "his case must contend with the well-established rule that the Government has traditionally been granted the widest latitude in the dispatch of its own internal affairs." *Rizzo v. Goode,* 423 U.S. 362, 378–79, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976) (citations and internal quotation marks omitted). This "well-established rule" bars federal courts from interfering with non-federal government operations in the absence of facts showing an immediate threat of substantial injury. *Hodgers–Durgin,* 199 F.3d at 1042–43.

In view of these standards, the district court did not abuse its discretion by denying Plaintiff's request for a permanent injunction. Plaintiff's evidence establishes several frustrating, but isolated, instances of malfunctioning lift service on Tri–Met. The evidence also shows that, unfortunately, a few individual Tri–Met operators have not treated passengers as they are required and are trained to do. Under the regulations, these occasional problems do not, without more, establish a violation of the ADA. At most, the evidence shows past violations of the ADA. It does not,

however, support an inference that Plaintiff faces a real and immediate threat of *continued, future* violations of the ADA in the absence of injunctive relief. The FTA report finding Tri–Met in compliance with the ADA for 1999 supports the conclusion that Plaintiff does not face an immediate threat of future ADA violations. Tri–Met's practices and procedures for ensuring ADA compliance further show that Plaintiff does not face a threat of immediate irreparable harm without an injunction. Finally, the fact that Tri–Met is a local governmental agency with procedures already in place for monitoring lift performance and ADA compliance militates against a federal court's mandating substitute procedures of its own design to address the same issues.

Plaintiff argues that the district court erred for three reasons: (1) the district court's conclusion that he had standing to request an injunction logically *required* the court to conclude that he had presented sufficient evidence of a threat of future harm; (2) the record establishes continuing, pervasive violations of the ADA sufficient to entitle Plaintiff to injunctive relief; and (3) because Tri–Met is a *local* governmental agency, it is not entitled to the same judicial deference as a *state* agency. We are not persuaded by these contentions.

■■■ This court already has rejected the argument that a determination that a plaintiff has suffered sufficient injury to support standing logically requires the court to conclude that the plaintiff necessarily has demonstrated a sufficient fear of immediate and substantial injury to warrant an injunction. *See Hodgers–Durgin,* 199 F.3d at 1042 (recognizing that evidence sufficient to support conclusion that a plaintiff faced a likelihood of future harm does not necessarily establish that the plaintiff faces an immediate threat of sub-

stantial and irreparable harm). Second, as discussed above, the record does not support a finding that Plaintiff faces an immediate threat of irreparable harm. Finally, a federal court must exercise restraint when a plaintiff seeks to enjoin any non-federal government agency, be it local or state. That Tri–Met is a *local* governmental entity does not, as Plaintiff argues, lighten his burden. *See Rizzo*, 423 U.S. at 380, 96 S.Ct. 598 (recognizing that the same principles govern when an injunction is sought against an agency of a local government and applying them to a request for an injunction against city officials).

In reaching its conclusion, the district court mistakenly suggested that a defendant's intent is an element of a claim for injunctive relief under the ADA. Citing *Thomas v. County of Los Angeles*, 978 F.2d 504, 508 (9th Cir.1992), the district court stated that Plaintiff was not entitled to injunctive relief in the absence of a "strong factual record, showing an intentional and pervasive pattern of misconduct." *Midgett*, 74 F.Supp.2d at 1013.

■■ We have never held that a plaintiff must prove an intentional violation of the ADA in order to obtain an injunction mandating compliance with its provisions. To the contrary, we have acknowledged that equitable remedies for violations of the ADA are available regardless of a defendant's intent. *Ferguson v. City of Phoenix*, 157 F.3d 668, 674–75 (9th Cir. 1998). Nevertheless, it is clear that a plaintiff seeking an injunction against a local or state government must present facts showing a threat of immediate, irreparable harm before a federal court will intervene. *Rizzo*, 423 U.S. at 377–80, 96 S.Ct. 598; *Hodgers–Durgin*, 199 F.3d at 1042–44. Because Plaintiff did not establish such a threat on this record, and because the district court relied on that

ground as well, the district court did not abuse its discretion by denying a permanent injunction.

### B. *Compensatory Damages*

■ Plaintiff argues that the district court erred by ruling against him as a matter of law on his claim for compensatory damages. The district court held that compensatory damages are not available for a violation of the ADA without a showing of discriminatory intent and that Plaintiff has presented no evidence supporting an inference of discriminatory intent. *Midgett*, 74 F.Supp.2d at 1018. Plaintiff asks us to overrule a previous decision requiring a showing of intent. In the alternative, he contends that the record supports an inference of intent.

In *Ferguson*, 157 F.3d at 675–76, we expressly held that a showing of discriminatory intent was a prerequisite to obtaining compensatory damages under the ADA. We did not decide whether "deliberate indifference" or "discriminatory animus" provided the appropriate level of intent. *Id.* As a panel, we are not free to overrule that decision. And, as the district court concluded, the record does not support an inference that Tri–Met violated the ADA with either "deliberate indifference" or "discriminatory animus." To the contrary, the record shows that Tri–Met has the good-faith intention to comply with the ADA, as evidenced by its practices and programs directed at ensuring ADA compliance. Therefore, we affirm the district court's ruling on Plaintiff's claim for damages.

### CONCLUSION

The district court did not abuse its discretion by denying Plaintiff's request for injunctive relief. Further, the court properly rejected Plaintiff's claim for compensatory damages. Consequently, we affirm.

the summary judgment in favor of Tri–Met.

AFFIRMED.