Christopher BACON, et al. Plaintiffs,

v.

**CITY OF RICHMOND,
et al., Defendants.**

**No. CIV. 3:05CV425–HEH.**

United States District Court,
E.D. Virginia,
Richmond Division.

Sept. 7, 2005.

701

David Denman Hopper, Cook Heyward Lee Hopper & Feehan PC, Richmond, VA, Benjamin M. Stern, Cynthia D. Vreeland, Wilmer Cutler Pickering Hale & Dorr LLP, Boston, MA, Christopher Davies, Christopher J. Herrling, Wilmer Cutler Pickering Hale & Dorr LLP, Washington, DC, for Plaintiffs.

Beverly Joanne Agee Burton, Office of the City Attorney, Kimberly Friend Smith, Bradford Allen King, Harrell & Chambliss LLP, William Delaney Bayliss, Edward James Dillon, Jr., Williams Mullen, Richmond, VA, for Defendants.

## *MEMORANDUM OPINION* (Denying Defendants' Motions to Dismiss)

HUDSON, District Judge.

THIS MATTER is before the Court on Defendants City of Richmond (the "City"), L. Douglas Wilder (the "Mayor"), the City Council of Richmond's (the "City Council") (collectively hereinafter the "City Defendants") Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), and Defendant City of Richmond School Board's (the "School Board") Motion to Dismiss under Rule 12(b)(1) and (6). All of the parties have filed memoranda of law in support of their respective positions and oral argument was heard on September 1, 2005.

## I. Background

Plaintiffs Christopher Bacon ("Bacon"); "D.B." ("D.B.") suing by and through his mother and next friend Vicky Beatty ("Beatty"), Beatty in her individual capacity; and Citizens for Full Access in Richmond ("C–FAIR") (collectively hereinafter "Plaintiffs") filed this suit against Defendants and the School Board alleging violations of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131–12134 (the "ADA"); § 504 of the Rehabilitation Act, 29 U.S.C. § 794 (the "RA"); and the Virginians with Disabilities Act of 1985, Va.Code § 51.5 *et seq.* (the "VDA"). Each of the Plaintiffs are either disabled or has a disabled child, and is a member of C–FAIR, an organization comprised of citizens of Richmond who are concerned with the rights of persons with disabilities. Plaintiffs have filed this suit seeking redress for the alleged shortfalls of the school system's handicap accessibility.

According to the Complaint, these shortfalls were identified in surveys required by the ADA to identify accessibility improvements dictated by Title II, conducted in both 1992 and 2005. The 1992 survey revealed that none of the City's fifty-seven schools fully complied with the ADA, the Rehabilitation Act, nor the VDA. The 2005 study indicated that none of the previously identified schools from the 1992 survey, that are in current use, have been brought into full compliance. Of the sixty school facilities surveyed in 2005, fifty-six did not appear to comply with these accessibility standards. The surveys did not include an evaluation of school playgrounds and athletic facilities, which Plaintiffs contend are also non-compliant. Allegedly only four schools met all ADA, RA, and VDA standards.

Plaintiff Bacon is a father of two daughters who attend Richmond Community High School ("RCHS") and Albert Hill Middle School. He lost both of his legs during the Vietnam War, and depends on a wheelchair for mobility. His daughters' schools are alleged to have inadequate handicap accessibility, leaving Bacon unable to attend school events. RCHS has four stories, yet no elevator. Therefore, Bacon contends that he is not able to enter the second or third levels, or the basement. According to the Complaint, on two occasions, Bacon has left his wheelchair behind, and hopped up and down the stairs using his arms in order to meet with teachers. Further, Bacon states that he has had difficulty picking his children up from school because the handicapped accessible door is locked after-school, while the non-handicapped accessible door is left unlocked. Bacon is therefore forced to wait for someone to enter or exit the building.

Plaintiffs Vicki Beatty and her son, D.B., have also allegedly been adversely effected by deficient handicap accommodation. D.B. would ordinarily attend William Fox Elementary School ("Fox Elementary") with his brother, which is located five blocks away from his home. Instead, he is bused to John B. Cary Elementary School ("Cary Elementary"), which is located outside of his school zone and is alleged to be only partially handicapped accessible. As a result of being bused to a school out of his neighborhood, D.B. is routinely late for class. He also alleges that he has had difficulty making friends with children in his neighborhood since he does not attend the same school. Further, he states that he has not been able to attend functions held at other schools in the City of Richmond, like his brother's theater performance, because of their lack of handicap accommodations. His mother, Beatty, also claims to have faced difficulty participating in the Fox Elementary's PTA because she has not been able to find a babysitter for D.B., and has difficulty transporting him into the school because there are no handicap ramps.

To address the shortfalls identified in the 2005 survey, the School Board allegedly established an ADA Subcommittee to develop a plan of action for remedying the identified deficiencies. In March 2005, the ADA Subcommittee presented the School Board with a three year plan to bring the schools into compliance. The School Board adopted the plan and incorporated it into its Capital Improvement Plan proposed for the City's next budget. The Complaint maintains that the Mayor and City Council, however, rejected the Capital Improvement Plan Budget. According to Plaintiffs, the Mayor and City Council approved a budget with almost no funding to correct the school's handicap accommodation deficiencies. This lawsuit followed, seeking a permanent injunction to require the schools to make the necessary changes to accommodate the needs of the disabled.

## II. Analysis

### A. Motion to Dismiss under Rule 12(b)(1)

#### 1. Standing of Plaintiffs Beatty and C–FAIR

The threshold issue is whether Plaintiffs have standing to prosecute the claims asserted. The City Defendants challenge the standing of Plaintiffs Beatty and C–FAIR, arguing that Beatty cannot raise an independent claim because she is not disabled, and C–FAIR cannot bring suit in its representational capacity. The School Board further questions Plaintiffs' ability to claim injury as to all handicap inaccessible schools in the City of Richmond and argue instead, that the injuries claimed should be limited to the four schools that Plaintiffs are attending or in which there is a direct impact. These contentions require the Court to determine whether it has jurisdiction under Rule 12(b)(1).[1]

The doctrine of standing derives from Article III of the Constitution, which precludes federal courts from issuing advisory opinions, and instead, limits their jurisdiction to actual cases and controversies. The essence of our inquiry into standing focuses on whether Plaintiffs are proper parties to initiate suit. *Raines v. Byrd,* 521 U.S. 811, 818, 117 S.Ct. 2312, 2317, 138 L.Ed.2d 849 (1997). To establish standing, Plaintiffs must demonstrate: (1) an injury-in-fact that is concrete and particularized; (2) that the injury was caused by the conduct complained of; and (3) that such injury is likely to be redressed by a favorable judicial decision. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992).

■ The City Defendants maintain that Beatty and CFAIR are not disabled, and therefore, do not have standing. The Court is of the opinion that Beatty is a proper plaintiff. She has standing to bring a claim in both an independent and representational capacity under the ADA. "A public entity shall not exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 28 C.F.R. 35.130(g). She has standing in her representational capacity under the RA and VDA in that she is suing as her minor child's next friend. *See* Rule 17; *see also* Va Code Ann. § 8.01–8.

C–FAIR has standing in its representational capacity with respect to the claims asserted under the ADA and the RA. The ADA grants relief to entities as well as individuals. *Addiction Specialists, Inc. v. The Township of Hampton,* 411 F.3d 399, 405 (3rd Cir.2005). And the enforcement

---

**1.** Although the City Defendants have challenged standing under Rule 12(b)(6), its arguments will be reviewed under the proper standard for determining jurisdiction, Rule 12(b)(1).

provision of the ADA and RA do not limit relief to "qualified individuals with disabilities." *Innovative Health Sys., Inc. v. City of White Plains,* 117 F.3d 37, 47 (2nd Cir.1997).

■ Here, C–FAIR has associational standing to sue on behalf of its interested members in that (1) its members, such as Bacon, Beatty and D.B., have standing to sue in their individual capacities; (2) the interests at stake are germane to the group's purpose of securing equal opportunity for persons with disabilities to participate in all areas of public life in the City of Richmond; and (3) neither the claims made nor the relief requested requires the participation of individual members in the suit. *See Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977); *See also White Tail Park, Inc. v. Stroube,* 413 F.3d 451, 458 (4th Cir.2005). Thus, C–FAIR may represent the interests of its effected members under Count One and Two of the Complaint.

■ C–FAIR, however, does not have standing to present a claim under the VDA. Under Virginia law, persons or entities only acquire standing to sue in a representational capacity by asserting the rights of another when specifically authorized by statute. *Carnes v. Board of Supervisors of Chesterfield County,* 252 Va. 377, 383, 478 S.E.2d 295 (1996). Since the VDA Act does not provide for associational representation, C–FAIR, therefore, lacks standing as to Count Three. This claim is not dismissed, however, as all other named Plaintiffs have standing to pursue a claim under the VDA.

### 2. Plaintiffs' Injuries–In–Fact

■ The School Board next assails Plaintiffs' standing by impugning their claimed "injuries-in-fact." Specifically, it argues that Plaintiffs' standing is limited to the four schools identified in the Com-plaint, namely Richmond Community High School, Albert Hill Middle School, William Fox Elementary School and John B. Cary Elementary School. The School Board maintains that Plaintiffs fail to show any actual injuries occurring at other school facilities, in that they have never personally encountered architectural barriers that deny them access.

■ The Court is not persuaded that the law requires a handicapped plaintiff, or one with an appropriate relationship to a disabled person, who is a student, or has a child or other family member who is a student in the Richmond public schools, to suffer the public humiliation of unsuccessfully attempting to enter a public school facility in order to have standing under the ADA, RA, or VDA. To satisfy the actual injury requirement, all a disabled plaintiff must demonstrate is a real and immediate threat that a particular barrier will cause future harm. *Disabled Americans for Equal Access Inc. v. Ferries Del Caribe, Inc.,* 405 F.3d 60, 64 (1st Cir.2005).

Here, Plaintiffs are seeking prospective relief, not damages for past injuries. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 101–02, 107, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983) (Prospective relief is available if Plaintiffs are suffering a continuing injury or are under a real and immediate threat of being injured in the future. Past wrongs however are probative evidence of whether there is a real and immediate threat of repeated injury); *see also Tandy v. City of Wichita,* 380 F.3d 1277, 1283–85 (10th Cir.2004) (Disabled Plaintiffs' intention to use transit buses several times per year is sufficient injury in fact to support standing). Each Plaintiff has expressed a well-founded interest in attending events at facilities other than the four schools mentioned in the Complaint. Simply because they are a student at one school, or the parent of a child

attending one school, should not preclude them from attending programs, events and activities held at other schools open to the entire student population. Thus, the individual Plaintiffs have satisfied their requirements for city-wide Article III standing under all three statutes relied upon.

### B. Motion to Dismiss under Rule 12(b)(6)

In addition to the jurisdictional challenge mounted under Rule 12(b)(1), the School Board and City Defendants contest the sufficiency of the pleadings to state an actionable claim. To warrant dismissal of a complaint under 12(b)(6), this Court must find beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. This rule was recently restated by the Fourth Circuit in *Hatfill v. New York Times Co.*, 416 F.3d 320 (4th Cir.2005). As further noted in *Hatfill*, to state an actionable claim, a civil complaint in federal court must provide a short and plain statement that the pleader is entitled to relief. It is sufficient if it gives the defendants fair notice of the nature of plaintiff's claim, and the grounds upon which it rests. And at this stage of the proceedings, the Court need not "resolve conflicts surrounding the facts, the merits of a claim; or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir.1992). Further, the Court has the discretion to disregard extraneous materials attached to the motion to dismiss, and is not required to convert the motion to one for summary judgment. *See* Rule 12.

### 1. Count One—Violation of the ADA

Initially, both the City Defendants and the School Board contend that they are not the party responsible for the lack of handicap accommodations, and in essence, blame the other for the lack of corrective action. The School Board maintains that under Virginia law, it is not responsible for

funding remedial projects such as those at issue here, and argues that it is the City's burden, since it physically owns the school property. The City Defendants argue that it has no "legal responsibility whatsoever for the care and management of the Richmond Public School System." Compl. at 8. Determining responsibility for the violations claimed requires external factual findings based upon information beyond the boundaries of the Complaint. And in the Court's opinion action on the part of all defendants is necessary to provide the complete relief sought, as it will require both appropriation by the City Council as well as implementation by the School Board.

■ Additionally, the Mayor and City Council deny responsibility under the ADA, as they do not believe they are public entities within the meaning of the ADA and consequently, they are not proper parties to this suit. The Court disagrees with the Mayor and the City Council. To the extent that they are acting in their official capacity, the Mayor and City Council members are public entities under the ADA, 42 U.S.C. § 12132. *See Henrietta v. Bloomberg*, 331 F.3d 261, 288 (2nd Cir.2003). Again, this case does not seek monetary damages, only prospective remedial action. *Id.* And while the City Council and Mayor may not be statutorily responsible for maintaining the schools, their participation in the funding stream is critical to the remedy. Therefore, the Court believes that the City Council and Mayor are necessary parties to this action. *Berlinsky v. Woods*, 178 F.2d 265, 266–67 (4th Cir.1949). By accepting federal funding, the City has assumed an affirmative obligation to ensure that the Richmond City Schools conform with the ADA, and that the disabled are able to participate in programs held at school facilities.

■ The City further alleges that Count One, as pled, is facially inadequate to state a cause of action under the ADA. The ADA is a broad remedial statute. *See Penny v. United Parcel Service,* 128 F.3d 408, 414 (6th Cir.1997). To come within its scope of protection, Plaintiffs must plead that they (1) have a disability, or a statutorily sufficient relationship to a disabled person; (2) they are otherwise qualified to receive the benefits of the public service program or activity; and (3) they were excluded from participation in or denied the benefits of such program, service or activity, or otherwise discriminated against on the basis of disability. *Baird v. Rose,* 192 F.3d 462, 467–70 (4th Cir.1999).

■ It is clear from the pleadings that each of the Plaintiffs have a claim under the ADA. Bacon is allegedly barred from entering his daughters' school to pick them up from school activities, and must resort to hopping up and down stairs using his arms to meet with school teachers. D.B. contends that he is late for school because he must travel to a facility outside of his neighborhood. The school closest to home, where his brother attends, is not handicap accessible. The lack of handicap accommodations inhibits him from attending functions held at other school facilities, such as his brother's school play. And his mother cannot easily attend school activities and PTA meetings because the school cannot accommodate her son's needs. Each of these Plaintiffs are members of C–FAIR, who therefore, share their grievances and desires to benefit from school programs and activities that non-handicapped individuals enjoy. Thus, Plaintiffs have sufficiently plead a cause of action to pursue redress under the ADA.

The law does not require, as City Defendants suggest, that Plaintiffs' request some specific form of accommodation as a prerequisite to a valid ADA claim. This argument is frankly ludicrous. The ADA requires that any program or activity held at a school be made accessible to the handicap. The burden is not on the disabled to create accommodation solutions, but on those that provide services or facilities which hinder their participation.

The City Defendants last argument with respect to Count One focuses on Plaintiffs' request for specific architectural modifications, such as handrails, unlocked handicap accessible doors, ramps, etc... The issue of what additional modifications may be necessary for full compliance is a factual issue reserved for trial. The City Defendants' subsidiary argument that some school facilities may be exempted or grandfathered from the ADA, or have been the subject of renovations also raises triable issues of fact. At this juncture, a Rule 12(b)(6) motion turns on the facial sufficiency of the pleadings, and clearly, the face of the Complaint states a cause of action under the ADA.

### 2. Count Two—Violations of § 504 of the RA

■ The Council and Mayor next argue that § 504 is limited to alleged discrimination that has a substantial impediment to employment. In their view, the Complaint is deficient for failure to specifically allege an employment-related program or activity. The Court believes that the City's reading of § 504 is too narrow. The RA prohibits discrimination against disabled individuals and their denial of benefits under any program or activity receiving Federal financial assistance. The definition of program or activity under the RA is broad enough to include the operations of a school system, educational programs and related activities. *See Constantine v. George Mason,* 411 F.3d 474, 495–96, 501 (4th Cir.2005). As the pleading requirements for a cause of action under the RA are the same as the ADA, Plaintiffs have

plead a cause of action upon which relief can be granted in Count Two. *Id.* at 498.

### 3. Count Three—Violations of the VDA

 Both the City Defendants and the School Board argue that Plaintiffs are barred from pursuing their VDA claim because they did not comply with the requisite notice requirements of the statute. Virginia Code § 51.5–46(B) requires that a Plaintiff provide either written notice within 180 days of the alleged violation *or* commence such action within 180 days of the violation. Here, the Complaint alleges that the violations in question are ongoing, up to and including the date of filing of the lawsuit. Thus, the filing of the lawsuit itself satisfies the statute.

Count Three as pleaded, is however, deficient in one respect. The VDA prohibits discrimination under any program or activity receiving state financial assistance or conducted by or on behalf of any state agency. Va Code. Ann. § 51.5–40. A close examination of the Complaint does not reveal any allegations or facts from which a reasonable inference may be drawn, that the City has received any state funding for its educational programs. Such an allegation is a necessary element of a claim under the statute, consequently its absence from the Complaint is a critical deficiency curable by amendment.[2] Thus, Count Three is dismissed with leave to amend.

An appropriate Order will accompany this Memorandum Opinion.

### ORDER (Denying Defendants' Motions to Dismiss)

THIS MATTER is before the Court on Defendants, City of Richmond, L. Douglas

---

Wilder, the City Council of Richmond's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), and Defendant City of Richmond School Board's (collectively hereinafter the "Defendants") Motion to Dismiss under Rule 12(b)(1) and (6). For the reasons set forth in the accompanying Memorandum Opinion, Defendants' Motions are GRANTED IN PART and DENIED IN PART. The Motions to Dismiss as to Count One and Count Two are DENIED. The Motions to Dismiss Count Three are GRANTED and this claim is DISMISSED WITH LEAVE TO AMEND.

The Clerk is directed to send a copy of this Order to all counsel of record.

It is SO ORDERED.

---

**2.** Despite arguing that Plaintiffs' pleadings were deficient for failing to argue that Richmond schools receive state funding, the City Defendants' counsel during oral argument conceded that the City of Richmond was dependent on state funding. This minor pleading oversight can be corrected by amendment.