**Christopher BACON, et al., Plaintiffs,**

v.

**CITY OF RICHMOND, et al., Defendants.**

**No. CIV.A. 3:05CV425–HEH.**

United States District Court, E.D. Virginia, Richmond Division.

Feb. 28, 2006.

See also 386 F.Supp.2d 700.

---

850

David Denman Hopper, Cook Heyward Lee Hopper & Feehan, Richmond, VA, Benjamin M. Stern, Cynthia D. Vreeland, Joseph Justin Mueller, Wilmer Cutler Pickering Hale & Dorr LLP, Boston, MA, Christopher Davies, Christopher J. Herrling, R. Michael Vagnucci, Wilmer Cutler Pickering Hale & Dorr LLP, Washington, DC, Rebecca Marie McCloskey, Wilmer Cutler Pickering Hale & Dorr LLP, New York City, for Plaintiffs.

Kimberly Friend Smith, Bradford Allen King, Harrell & Chambliss LLP, William Delaney Bayliss, Edward James Dillon, Jr., Williams Mullen, Richmond, VA, for Defendants.

### *MEMORANDUM OPINION*

**(Granting Plaintiffs' Motion for Summary Judgment and Denying Defendants' Motion for Summary Judgment)**

HUDSON, District Judge.

This suit seeks mandatory injunctive relief requiring the Richmond City Public Schools ("RPS") to be made accessible to persons with disabilities. The matter is

presently before the Court on cross-motions for summary judgment filed pursuant to Federal Rule of Civil Procedure 56. The plaintiffs and Defendants L. Douglas Wilder (the "Mayor"), the City of Richmond, and the Richmond City Council (the "City Council") (collectively the "City Defendants") have submitted memoranda of law in support of their respective positions. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and argument would not aid the decisional process.

## I. Background

Plaintiffs Christopher Bacon ("Bacon"); D.B., suing by and through his mother and next friend Vicky Beatty ("Beatty"); Beatty in her individual capacity; and Citizens for Full Access in Richmond ("C–FAIR") (collectively hereinafter "Plaintiffs") filed this suit against the City Defendants and the School Board of the City of Richmond ("School Board") alleging violations of Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131–34 (the "ADA"); Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (the "RA"); and the Virginians with Disabilities Act of 1985, Virginia Code § 51.5–1 et seq. (the "VDA"). Each of the plaintiffs is either disabled or has a disabled child and is a member of C–FAIR, an organization comprised of citizens of Richmond who are concerned with the rights of persons with disabilities.

Currently, fifty-six (56) of sixty (60) Richmond City Public Schools do not comply with the ADA and other federal and state disability laws. Plaintiffs filed this lawsuit seeking redress for the alleged architectural barriers to handicap accessibili-ty to school facilities. Plaintiffs request that the Court issue a permanent injunction requiring the RPS to make the necessary modifications to accommodate the needs of the disabled.

On September 7, 2005, the Court issued a Memorandum Opinion on the City Defendants' previous Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. See Bacon v. City of Richmond, 386 F.Supp.2d 700 (E.D.Va.2005). The Court held in part that Plaintiffs had sufficiently pleaded causes of action for violations of the ADA and Section 504 of the RA. See id. at 706–8. As to Plaintiffs' allegation of VDA violations, the Court held that the Complaint was deficient as it failed to "reveal any allegations or facts from which a reasonable inference may be drawn, that the City has received any state funding for its educational programs" as is required by Virginia Code § 51.5–40. Id. at 708. Plaintiffs then filed a First Amended Complaint to rectify this error. The Court also concluded that each Plaintiff has standing to pursue their ADA, RA and VDA claims.

Since the Court's earlier opinion, the School Board and Plaintiffs have reached a Settlement Agreement (the "Agreement"), which provides for a five (5) year remediation plan. (See Agreement, Ex. A, Ex. B.) In so doing, the School Board conceded that the RPS do not comply with the ADA, RA, and VDA, and that the evidence sufficiently satisfies all required elements of an ADA claim.[1] See Baird v. Rose, 192 F.3d 462, 467–70 (4th Cir.1999). Denying legal responsibility for the RPS, the Mayor and City Council declined to join in the Agreement. However, in their responsive plead-

---

1. Specifically, the Agreement states, "The School Board agrees and admits that the Richmond Public Schools and the services, programs, and activities offered in the Richmond Public Schools ... do not comply in all respects with the Disability Laws." (Agree-ment ¶ 1.) When viewed in conjunction with Virginia Code § 22.1–79, which places responsibility for the maintenance of school buildings with the School Board, the Court finds that the School Board has admitted liability.

ings, the City Defendants do not dispute that the vast majority of Richmond City Public Schools are not in structural compliance with the ADA. If non-compliance was genuinely at issue, Local Civil Rule 56(B) would require it to be specifically identified by the City Defendants in their pleadings.[2] There was no such designation by the City Defendants.

## II. Analysis

### A. Standard of Review

■ Summary judgment is appropriate only when the Court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also* Fed.R.Civ.P. 56(c). The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After the movant has met this burden, the non-moving party must come forward with specific facts showing that evidence exists to support its claims and

that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548. In ruling on cross-motions for summary judgment, the Court will not assume the absence of any genuine issues of material fact. *See ITCO Corp. v. Michelin Tire Corp., Commercial Div.*, 722 F.2d 42, 45 n. 3 (4th Cir.1983). Rather, where genuine issues of material fact exist, the Court will deny summary judgment for both parties and the case shall proceed to trial. *Id.*

In the case presently before the Court, there appear to be no contested material facts. None of the City Defendants dispute, nor could they, that the Richmond City Public Schools fail to meet the accessibility requirements imposed by the ADA.[3] Indeed, the pleadings and various attachments proffered by both Plaintiffs and City Defendants establish that the RPS have fallen short of the ADA's requirements since at least 1992. What remains is the legal issue of whether City Defendants are public entities responsible for the Richmond City Public Schools' non-compliance with Title II of the ADA.[4]

### B. Purposes of the ADA

■ Congress specifically outlined the purposes of the ADA; it exists:

---

2. Local Civil Rule 56(B) provides that "[e]ach brief in support of a motion for summary judgment shall include a specifically captioned section listing all material facts as to which the moving party contends there is no genuine issue and citing the parts of the record relied on to support the listed facts as alleged to be undisputed. A brief in response to such a motion shall include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute. In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."

3. The Court will not address Plaintiffs' and City Defendants' respective positions regarding the RA or the VDA, because the ADA's remedial provisions sufficiently address all of the relief that Plaintiffs seek. Notably, though, violation of one of these disability laws often indicates violation of all of them— the Fourth Circuit has construed the standards of liability for each as analogous. *See Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209, 216 (4th Cir.1994).

4. Under Title II of the ADA, "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b). In short, Congress intended for the ADA to "eliminate discrimination against 'individuals' with disabilities." *PGA Tour, Inc. v. Martin,* 532 U.S. 661, 688, 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001) (citing 42 U.S.C. § 12101(b)(1)). The plain language of § 12101(b), therefore, evinces clear Congressional intent to ensure equal treatment of disabled individuals, including, in appropriate cases, when these rights conflict with the interests of states, local governments, or their various subdivisions.[5]

Section 12101 also lists Congress's findings with respect to the ADA. One problem facing disabled Americans at the time Congress enacted the ADA was that "unlike individuals who have experienced discrimination on the basis of race, color, sex, national origin, religion, or age, individuals who have experienced discrimination on the basis of disability have often had no legal recourse to redress such discrimination." 42 U.S.C. § 12101(a). Reviewing the purposes of the ADA, it appears that Congress hoped to avoid this unequal result in part by "ensur[ing] that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities." *Id.* § 12101(b).

■ The ADA therefore imposes on this Court a legal obligation to ensure that claims alleging ADA violations under Title II, when brought by legitimate plaintiffs, are resolved with an appropriate legal remedy, one which adequately considers the needs and resources of all parties in interest. There is no apparent equivocation in the ADA concerning this mandate, and neither the Supreme Court nor the Fourth Circuit has held otherwise.

### C. City Defendants Are Necessary Parties

Unfortunately, the Settlement Agreement in this case resolves only part of this

---

A plaintiff alleging a violation of the ADA must prove, by a preponderance of the evidence, that "(1) she has a disability, (2) she is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) she was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of her disability." *Constantine v. Rectors and Visitors of George Mason Univ.,* 411 F.3d 474, 498 (4th Cir.2005).

**5.** For example, the Supreme Court has recognized "Congress's intent to abrogate state sovereign immunity" in creating a private cause

of action for ADA violations. *United States v. Georgia,* —— U.S. ——, ——, —— – ——, 126 S.Ct. 877, 879, 881–82, 163 L.Ed.2d 650 (2006) (citing *Bd. of Trs. of Univ. of Ala. v. Garrett,* 531 U.S. 356, 363–64, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001)); *see also Tennessee v. Lane,* 541 U.S. 509, 517–22, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004) (holding as constitutional Congress's abrogation of state immunity in the context of the ADA); *Constantine,* 411 F.3d at 489 ("Undoubtedly, Title II imposes a greater burden on the States than does the Fourteenth Amendment.").

dispute. Even though the School Board has the statutory responsibility to bring the RPS into ADA compliance, that can only be achieved if the City of Richmond maintains an adequate funding stream. The City of Richmond, City Council and Mayor, through the annual appropriation process, exercise varying levels of control over the available funding for capital improvements in the RPS. (*See* Defs.' Br. in Supp. of Mot. for Summ. J. at 6–12, Dec. 19, 2005; Agreement ¶ 3.) Thus, in order to effectuate the agreement between Plaintiffs and the School Board and to make the Richmond City Public Schools ADA-compliant, the School Board is dependent upon the City Defendants to provide the necessary funding. Consequently, the immediate issue is whether City Defendants, by virtue of their "power of the purse," bear some responsibility for correcting the ADA violations in the RPS, even if the City Defendants are not statutorily responsible for the care and management of the RPS. In this Court's view, the object of this lawsuit, and goals of the ADA, can only be achieved through a collaborative approach.

Plaintiffs' prayer for relief asks the Court to grant a permanent injunction requiring the defendants to make all Richmond City Public Schools ADA-compliant within a clearly defined period.[6] Although the School Board is the entity that directly controls the capital improvement process for the RPS and decides how to allocate its budget, it is the City Defendants who determine how much money will be appropriated to underwrite the budget. (*See* Defs.' Br. in Supp. of Mot. for Summ. J. at 6–12,

Dec. 19, 2005; Agreement ¶ 3; *see also* Va.Code § 22.1–95.) In other words, the School Board can never truly provide complete relief to Plaintiffs without some requirement obligating the City Defendants to appropriate the funding necessary to enable reasonable progress toward remediation.

■ The City Defendants steadfastly disagree that they have any legal responsibility for the condition of the RPS. The City Defendants contend that the School Board in past years has failed to properly request funding for ADA compliance in the budget process. This Court has no intention of conducting a fault-finding inquiry, but will dedicate its energy to devising an appropriate path of resolution, dictated by law and reason. The Court does not find that the City Defendants have engaged in conscious or purposeful discrimination. No such finding is necessary to obtain equitable remedies under the ADA. *Midgett v. Tri–County Metro. Transp. Dist. of Oregon,* 254 F.3d 846, 851 (9th Cir.2001).

■ The Mayor and City Council, acting on behalf of the City of Richmond and in their official capacities, are public entities under the ADA.[7] In concert, they alone undertake the decision-making process that determines the amount of funding allocated to the School Board, which in turn dedicates money to specific projects and programs. In short, through their administration of the budgeting process, the City Defendants exercise direct control over whether the School Board is capable of

---

**6.** Initially, Plaintiffs asked the Court to mandate compliance within three (3) years. (*See* First Am. Compl. at 36.) The Agreement reached by Plaintiffs and the School Board, however, extends the period for all RPS meeting ADA standards to five (5) years. (*See* Agreement, Ex. B.)

**7.** When a plaintiff seeks prospective injunctive relief against state officials acting within their official capacities, they are public entities under the ADA. *See Henrietta D. v. Bloomberg,* 331 F.3d 261, 288 (2d Cir.2003); *see also Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Ex parte Young,* 209 U.S. 123, 155–56, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

performing *any* remediation work. Therefore, their participation in the funding stream is critical to the remedy. Plaintiffs cannot practically receive full relief from the admitted ADA violations unless the Court also requires the City Defendants to participate in the remediation process.

The next task for the Court is crafting a reasonable scheme of remediation. Although this statutory requirement is clear, ADA jurisprudence provides minimal guidance in specifically defining a municipality's funding responsibility when an independent municipal agency has direct statutory accountability for compliance.

### D. Nature of the Remedy

■ The ADA operates as a broad remedial statute. *See Virginia Dep't of Educ. v. Riley,* 106 F.3d 559, 576–77 (4th Cir.1997). Each situation warrants an individualized solution, tailored to ensure reasonable compliance without undue financial burden to the affected governmental entity.

To mandate compliance with the ADA's provisions, a court may award equitable relief, typically in the form of a permanent injunction.[8] Such relief, if necessary, may significantly impact the public fisc. *Milliken v. Bradley,* 433 U.S. 267, 289, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977). The authority to fashion such remedies must be tempered by an acknowledgment that the power to administer the City of Richmond's budget and appropriate tax dollars is a matter soundly within the City Defendants' discretion and executive authority. *See Berlinsky v. Woods,* 178 F.2d 265, 267 (4th Cir.1949). It is therefore inappropriate for this Court to trespass on this prerogative by identifying a specific source or method of funding for the remediation plan

in this case. That decision is within the province of the Mayor and City Council. The Court does not believe the relief sought will be unduly fiscally burdensome if undertaken incrementally. The City Defendants, however, must undertake this responsibility in good faith.

This Court is of the opinion that the Agreement between Plaintiffs and the School Board provides an appropriate schedule for remediation. The Court will adopt the plan detailed in the Agreement. To achieve its purpose, the Court will direct the City Defendants to continue funding the School Board in good faith, consistent with the normal budget process, and with due consideration of the Agreement. The School Board and City Defendants have a shared legal obligation to ensure that the Richmond City Public Schools become ADA-compliant within a reasonable amount of time.

■ This Court believes the five (5) year period prescribed in the Agreement is a reasonable time for compliance. The primary responsibility for ADA compliance, in accordance with the terms of the Agreement, resides with the School Board. The City Defendants' obligation is limited to providing a reasonable, good faith appropriation to the School Board in the normal course of the budget process, sufficient to enable ADA compliance within the specified time frame. The Court declines to appoint a special master to oversee compliance, as requested by Plaintiffs, but will retain continuing jurisdiction in this case. The Court will designate United States Magistrate Judge M. Hannah Lauck to hear and decide any issues relating to the implementation of the Agreement.

---

8. 42 U.S.C. § 12133 states that the ADA's remedies are those set forth in 29 U.S.C. § 794a. Section 794a makes available the relief listed in 42 U.S.C. § 2000e–5(g), which includes injunctions and other equitable relief.

An appropriate Order will accompany this Memorandum Opinion.

## ORDER

**(Granting Plaintiffs' Motion for Summary Judgment and Denying Defendants' Motion for Summary Judgment)**

THIS MATTER is before the Court on cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons stated in the accompanying Memorandum Opinion, Plaintiffs' Motion for Summary Judgment is hereby GRANTED and Defendants L. Douglas Wilder, the City of Richmond, and the Richmond City Council's Motion for Summary Judgment is hereby DENIED.

The Court retains continuing jurisdiction over this case and designates U.S. Magistrate Judge M. Hannah Lauck to resolve any issues relating to the execution of the Settlement Agreement.

Therefore, based upon the Court's ruling, Plaintiffs' Motion to Compel Production filed on December 19, 2005 (Docket No. 43), is hereby DENIED as moot; Plaintiffs' Motion for Clarification filed on January 20, 2006 (Docket No. 57), is hereby DENIED as moot; Plaintiffs' Contingent Motion for Voluntary Dismissal of the School Board of the City of Richmond filed on January 20, 2006 (Docket No. 58), is hereby DENIED as moot; Defendants' Motion to Exclude the Plaintiffs' Rule 30(b)(6) Deposition of the School Board filed on February 21, 2006 (Docket No. 69), is hereby DENIED as moot; and Defendants' Motion to Exclude Testimony of Plaintiffs' Expert Witnesses filed on February 23, 2006 (Docket No. 71), is hereby DENIED as moot.

It is FURTHER ORDERED that the hearing scheduled for March 2, 2006 and the trial scheduled for April 19–20, 2006 are CANCELLED.

The Clerk is directed to send a copy of this Order to all counsel of record.

It is so ORDERED.