# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BARBARA BOOSE,
        *Plaintiff-Appellant,*

    v.

TRI-COUNTY METROPOLITAN
TRANSPORTATION DISTRICT OF
OREGON,
        *Defendant-Appellee.*

No. 08-35878

D.C. No.
3:07-CV-00458-PK

OPINION

Appeal from the United States District Court
for the District of Oregon
Paul J. Papak, Magistrate Judge, Presiding

Argued and Submitted
October 8, 2009—Portland, Oregon

Filed November 23, 2009

Before: Diarmuid F. O'Scannlain and N. Randy Smith,
Circuit Judges, and Ronald M. Whyte,* District Judge.

Opinion by Judge O'Scannlain

---

*The Honorable Ronald M. Whyte, United States District Judge for the
Northern District of California, sitting by designation.

15523

## COUNSEL

Karen Berkowitz, Oregon Law Center, Portland, Oregon, argued the cause for appellant Barbara Boose and filed briefs; Spencer M. Neal, Oregon Law Center, Portland, Oregon, and Ellen Gradison, Oregon Law Center, Corvallis, Oregon, were also on the briefs.

Keith M. Garza, Oak Grove, Oregon, argued the cause for appellee TriMet and filed a brief; Kimberly Sewell, Portland, Oregon, was also on the brief.

Susan E. Nash, Wesley T. Shih, Avi Braz, and Adam R. Lawton, Munger, Tolles & Olson LLP, Los Angeles, California; and Paula Perlman, Deborah Dorfman, and Shawna Parks, Los Angeles, California, submitted a brief in support of the appellant on behalf of amici curiae Disability Rights Legal Center, Disability Rights California, the California Founda-

tion for Independent Living Centers, the Disability Rights Education and Defense Fund, Inc., Disability Rights Washington, and Disability Rights Oregon.

Tiffany Lorenzen, San Diego, California, submitted a brief in support of the appellee on behalf of amicus curiae San Diego Metropolitan Transit System.

James LaRusch, Washington, DC; Kenneth Scheidig, Oakland, California; George Sparks, Sacramento, California; Madeline Chun, Hanson Bridgett Marcus Vlahos & Rudy, LLP, San Francisco, California; Gregory Smith, Muncie Public Transportation Corp., Muncie, Indiana; Tiffany Lorenzen, San Diego, California; Ben C. Fetherston, Jr., Fetherston Edmonds LLP, Salem, Oregon; Jenifer Ross-Amato, Denver, Colorado; and Kevin Desmond, Seattle, Washington, submitted a brief in support of the appellee on behalf of amici curiae American Public Transportation Association, Alameda-Contra Costa Transit District, CalACT, San Mateo County Transit District, Golden Gate Bridge, Highway and Transportation District, Central Contra Costa Transit Authority, Muncie Indiana Transit System, San Diego Metropolitan Transit System, Salem Area Mass Transit District, Regional Transportation District-Denver, and King County Department of Transportation.

---

**OPINION**

O'SCANNLAIN, Circuit Judge:

We are called upon to decide whether the Americans with Disabilities Act requires public transit systems to make certain modifications to their programs for disabled riders.

I

A

Tri-County Metropolitan Transportation District of Oregon ("TriMet") is a public entity providing mass transportation services in Multnomah, Washington, and Clackamas Counties (generally, the Portland, Oregon metropolitan area). Pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, TriMet has developed and implemented a plan for providing paratransit service for disabled riders unable to use its fixed route system of buses and light rail.[1] TriMet's plan has been approved by the Federal Transit Administration ("FTA"), a division of the Department of Transportation ("DOT"), as meeting the requirements of the ADA.

TriMet's paratransit system, the LIFT Paratransit Program ("LIFT"), provides door-to-door, shared-ride service twenty-two hours a day, seven days a week, in all areas in the TriMet district. *See* LIFT Rider's Guide 6-7, *available at* http://trimet.org/pdfs/lift/liftguide.pdf (last accessed Nov. 15, 2009). LIFT serves 22,600 riders, providing over 3600 rides per day and over a million rides per year.[2] *See* LIFT Program Ridership and Service Statistics, *available at* http://trimet.org/pdfs/lift/liftannualreport.pdf (last accessed Nov. 15, 2009). LIFT's fleet consists of 225 buses and 15 sedans. When no vehicle is available, LIFT contracts with taxi companies to

---

[1]The Department of Transportation defines "paratransit" as "comparable transportation service required by the ADA for individuals with disabilities who are unable to use fixed route transportation systems." 49 C.F.R. § 37.3.

[2]Although LIFT operations cost over $29 million a year, passenger revenues total only $1 million. *See* LIFT Program Ridership and Service Statistics, *available at* http://trimet.org/pdfs/lift/liftannualreport.pdf (last accessed Nov. 15, 2009). The net cost to TriMet for a LIFT trip is $26.50, compared to $1.63 for a fixed route trip. *See* Tri-County Elderly and Disabled Transportation Plan 7-2, *available at* http://trimet.org/pdfs/publications/edplan.pdf (last accessed Nov. 15, 2009).

provide backup service. Currently, LIFT assigns vehicles to riders based solely on the requested pickup time and location.

Barbara Boose, who suffers from a balance disorder, has been approved by TriMet to use LIFT since 1996.[3] Boose uses LIFT to "get to medical appointments, do her grocery shopping, and generally, to get around." In 2006, she submitted a request that LIFT accommodate her disability by scheduling rides in only sedans or taxis, as she experiences "less dizziness and nausea" in those vehicles than in LIFT buses. Accompanying her request was a letter from her doctor stating that "Ms. Boose has reported a number of Tri-Met [LIFT] bus-associated traumas" that have "aggravat[ed] her condition." He recommended "use of sedans or taxis" to "reduce her neurological & emotional stress." TriMet declined Boose's request.

### B

Boose filed a complaint in the district court alleging that TriMet's refusal to accommodate her request violated the ADA and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq*. She sought declaratory and injunctive relief, as well as attorneys' fees and costs. Boose and TriMet filed cross-motions for summary judgment. The district court granted TriMet's motion and denied Boose's motion. Boose timely appealed.

### II

[1] The sole issue presented in this appeal is whether under the ADA and Rehabilitation Act, LIFT must accommodate Boose pursuant to a Department of Justice ("DOJ") regulation requiring public entities to "make reasonable modifications in

---

[3]TriMet approves riders for LIFT eligibility based on a self-certification process. For the purposes of summary judgment, TriMet does not contest whether Boose is disabled within the meaning of the ADA.

policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). This issue is one of first impression in this circuit.[4]

Boose and the amici disability rights organizations argue that this DOJ regulation applies to TriMet by its own independent force, or in the alternative, through incorporation by reference in DOT regulations. We address these contentions in turn.[5]

### A

Boose and amici argue that because Title II, Part A of the ADA, prohibits discrimination against the disabled by public entities such as TriMet,[6] 42 U.S.C. § 12132,[7] and the Attorney General has the authority to promulgate regulations imple-

---

[4]Boose suggests that this court has already weighed in on this issue in *Weinreich v. Los Angeles County Metropolitan Transportation Authority*, 114 F.3d 976 (9th Cir. 1997). However, because *Weinreich* did not involve a paratransit service, but rather a disabled rider's eligibility for a reduced-fare program for fixed route bus service, it is inapposite.

[5]Boose asserted claims under both the ADA and the Rehabilitation Act, which applies to programs receiving federal financial assistance. Because the ADA was modeled on section 504 of the Rehabilitation Act, "courts have applied the same analysis to claims brought under both statutes." *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999). We do so here as well and focus on whether TriMet has violated the ADA.

[6]TriMet is indisputably a public entity subject to Part A. *See Midgett v. Tri-County Metro. Transp. Dist. of Oregon*, 254 F.3d 846, 847 (9th Cir. 2001).

[7]Section 12132 provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

menting Part A, *id.* § 12134(a), TriMet must follow the Attorney General's reasonable modification regulation.

1

Applicability of Part A to TriMet does not, however, resolve the issue of whether the DOJ's reasonable modification regulation applies to LIFT, since Part A also specifically prohibits the DOJ from making rules that "include any matter within the scope of the authority of the Secretary of Transportation under section 12143." *Id.* Hence, we must decide whether the accommodation sought by Boose falls within the scope of that authority.

**[2]** While Part A of Title II deals with public entities in general, Part B deals with public transportation. *See Olmstead v. Zimring*, 527 U.S. 581, 589 n.3 (1999). Section 12143 under Part B is titled "Paratransit as a complement to fixed route service." 42 U.S.C. § 12143. It provides:

> It shall be considered discrimination for purposes of [the ADA] and [the Rehabilitation Act] for a public entity which operates a fixed route system . . . to fail to provide . . . paratransit and other special transportation services to individuals with disabilities . . . that are sufficient to provide to such individuals a level of service (1) which is comparable to the level of designated public transportation services provided to individuals without disabilities using such system; or (2) in the case of response time, which is comparable, to the extent practicable, to the level of designated public transportation services provided to individuals without disabilities using such system.

*Id.* The Secretary of Transportation has the sole authority to "issue final regulations to carry out this section." *Id.* § 12143(b). These regulations must establish, *inter alia*,

"minimum service criteria for determining the level of services to be required under this section." *Id.* § 12143(c)(3).

**[3]** Boose describes her requested modification as "scheduling transportation for her using TriMet sedans instead of TriMet buses." In other words, she is dissatisfied with the level of service TriMet currently provides through LIFT and would like an enhanced level of service that would enable her to choose whatever vehicle she would like to ride. Boose's request, therefore, fits squarely within the definition of "service criteria." That the DOT has not yet promulgated a rule concerning scheduling by vehicle type[8] does not mean that the DOJ's regulations automatically fill this regulatory vacuum. Surely the scope of the Secretary's authority exceeds the extent to which he has currently regulated. Indeed, Boose does not try to argue that the Secretary lacks the authority to promulgate such a regulation. She even concedes that "[t]he DOJ cannot promulgate regulations regarding transportation . . . services. Only the DOT can do that." We agree. Only the Secretary of Transportation can make rules "determining the level of services to be required" for paratransit. 42 U.S.C. § 12143(c)(3).

**[4]** If the Attorney General cannot make rules about scheduling paratransit trips by vehicle type, then neither can he make rules that effectively require paratransit systems to schedule trips by vehicle type. Application of the DOJ's reasonable modification regulation to TriMet in this instance would do just that, in violation of the regulation's enabling statute. *See id.* § 12134(a). We decline to impose a requirement on TriMet that would upset the balance of authority that

---

[8]The DOT has promulgated a regulation concerning scheduling by desired departure time. *See* 49 C.F.R. § 37.131(b)(2). The heading for this regulation, "Service criteria for complementary paratransit," reinforces our conclusion that scheduling trips is a service criterion. *See id.* § 37.131; *see also Brinn v. Tidewater Transp. Dist. Comm'n*, 242 F.3d 227, 229-30 (4th Cir. 2001) (noting that "scheduling of paratransit trips" is "[o]ne of the specified service criteria" in the DOT regulations).

Congress has carefully allocated between the Attorney General and Secretary of Transportation. Consequently, we conclude that the DOJ's reasonable modification regulation does not, and cannot, apply by its own independent force. *See Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 675 (5th Cir. 2004) (holding that a reasonable modification that "relates specifically to the operation of [a paratransit system's] service" is "exempt from the Attorney General's regulations in 28 C.F.R. part 35").

2

**[5]** Part A of the ADA unambiguously prevents the Attorney General from regulating paratransit scheduling, which is a "matter within the scope of the authority of the Secretary of Transportation under section 12143." 42 U.S.C. § 12134(a). "If the intent of Congress is clear, that is the end of the matter . . . ." *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984).

**[6]** Nevertheless, we briefly address the contention that a DOJ regulation and its preamble compel a contrary conclusion. Amici focus on the language of 28 C.F.R. § 35.102(b), which provides that "[t]o the extent that public transportation services . . . are covered by [Part] B . . . , they are not subject to the requirements of this part." They also quote the language of this regulation's preamble:

> Paragraph (b) of § 35.102 explains that to the extent that public transportation services . . . are covered by [Part] B . . . , they are subject to the regulations of the [DOT] at 49 CFR part 37 and are not covered by [28 CFR part 35]. . . . *Matters not covered by subtitle B*, such as the provision of auxiliary aids, *are covered by this rule*."

Nondiscrimination on the Basis of Disability in State and Local Government Services, 56 Fed. Reg. 35,694, 35,696

(July 26, 1991) (emphasis added); 28 C.F.R. pt. 35, App. A, § 35.102. Because "[t]he substitution of a sedan or taxi for a bus is not a 'matter covered by Part B,' " amici conclude that the preamble dictates that it is "outside the scope of § 35.102(b)'s exception."

Amici narrowly read the term "covered" to mean "specifically mentioned" by Part B or its implementing regulations. This construction is at odds with the regulation's enabling statute, which speaks more broadly of "the *scope of the authority* of the Secretary of Transportation." 42 U.S.C. § 12134(a) (emphasis added). Of course, we may not read 28 C.F.R. § 35.102(b) to be inconsistent with its enabling statute such that it enlarges the Attorney General's jurisdiction. *See Commodity Futures Trading Comm'n v. White Pine Trust Corp.*, 574 F.3d 1219, 1223 (9th Cir. 2009) ("[R]egulations . . . cannot go beyond the jurisdictional limits of the statute."); *Komarenko v. I.N.S.*, 35 F.3d 432, 435 (9th Cir. 1994) ("In order to be valid, a regulation must be consistent with its enabling statute.").

**[7]** We are satisfied, however, that the regulation is not actually inconsistent with the statute. The word "cover" is defined, *inter alia*, as "to have width or scope enough to include or embrace." *Webster's Third New Int'l Dictionary* 524 (1986). As we have explained, the Secretary's authority under Part B has scope enough to include Boose's requested accommodation; hence, the accommodation is a matter "covered by [Part] B" and "not subject to the requirements" of the DOJ regulations. 28 C.F.R. § 35.102(b). In any event, we decline the invitation to read 28 C.F.R. § 35.102(b) as expanding the DOJ's jurisdiction beyond the limits established by its enabling statute, 42 U.S.C. § 12134(a).

B

Next, Boose argues that the DOJ's reasonable modification regulation is incorporated by reference in DOT's regulations

implementing the ADA and Rehabilitation Act.[9] She makes this incorporation-by-reference argument because the DOT regulations do not mention reasonable modifications, except to the extent that they require *private* entities to make them. *See* 49 C.F.R. § 37.5(f).

1

Boose sets forth a tidy syllogism to explain why TriMet must accommodate her by providing her with the vehicle of her choice. First, citing 49 C.F.R. §§ 27.19(a) and 37.21(c), she states that the "DOT regulations *adopt and incorporate* the DOJ Title II A regulations" except in the rare case that the DOT and DOJ regulations are inconsistent. Because the DOT regulations "do not cover the scheduling of one type of accessible vehicle over another," she finds no inconsistency. Ergo, she concludes that the DOJ's reasonable modification regulation applies to LIFT in this instance.

However, "[f]or the conclusion to stand the content of the premises must be true." *Schultz v. PLM Int'l, Inc.*, 127 F.3d 1139, 1143 (9th Cir. 1997) (Aldisert, J., dissenting). Boose's syllogism is based on the false premise that the DOT regulations "adopt and incorporate" the DOJ regulations wholesale.

[8] The plain text of 49 C.F.R. § 37.21(c) contradicts Boose's interpretation. That regulation merely states that entities "may be subject to ADA regulations of the Department of Justice," and that the DOT regulations shall be interpreted to be consistent with "applicable Department of Justice regulations." 49 C.F.R. § 37.21(c). Certainly, this provision *refers* to DOJ regulations, but does it also *incorporate* them? The DOT's use of qualifying terms such as "may" and "applicable" leads us to conclude that it does not.

---

[9]The amici disability rights organizations expressly declined to make this argument in their brief: "[A]mici do not argue that the *DOT* regulations contain a reasonable modification provision. Rather, the *DOJ* regulations impose this obligation by their own independent force."

If the DOT wanted to incorporate DOJ regulations by reference, it knew how to do so. With respect to *private* entities, the DOT has promulgated a regulation requiring their "compliance with the requirements of the rules of the Department of Justice concerning eligibility requirements, making reasonable modifications, providing auxiliary aids and services, and removing barriers (28 C.F.R. §§ 36.301-306)." *Id.* § 37.5(f). This provision lists the specific DOJ regulations that apply by both description and number. It clearly incorporates them by reference, in contradistinction to section 37.21(c).[10]

**[9]** That the DOT regulation implementing the Rehabilitation Act uses mandatory rather than permissive language does not change our analysis. Under that regulation, "[r]ecipients [of federal financial assistance] . . . *shall* comply with all applicable requirements of the [ADA] including . . . the regulations of the Department of Justice implementing [Title II] . . . of the ADA." 49 C.F.R. § 27.19(a) (emphasis added). However, because this regulation also uses the qualifying term "applicable," it does not purport to extend the reach of the ADA and its implementing regulations. *See* Transportation for Individuals with Disabilities, 56 Fed. Reg. 45,584, 45,584 (Sept. 6, 1991) (noting that section 27.19 was amended to clarify that "[t]he basic relationship between section 504 [of the Rehabilitation Act] and the ADA is that a recipient of DOT funds complies with its section 504 obligations by complying with its ADA obligations."). Boose cites

---

[10]Boose argues that the preamble and appendix to 49 C.F.R. § 37.21 support her contention that this provision incorporates the DOJ regulations by reference. The preamble states that "most, if not all, transportation providers covered by Part 37 are also covered by DOJ regulations." 56 Fed. Reg. at 45,588. The appendix states that "[t]he DOT rules apply only to [a public] entity's transportation facilities, vehicles, and services; the DOJ's rules may cover the entity's activities more broadly." 49 C.F.R. pt. 37, App. D, § 37.21. However, to say that public entities providing transportation services "may be subject" to DOJ rules that "cover the entity's activities more broadly" does nothing to validate Boose's incorporation-by-reference argument.

no authority for the proposition that the Rehabilitation Act confers greater substantive rights to disabled riders of paratransit services than the ADA. Therefore, we read the DOT regulations to be consistent with each other.

2

Boose urges us to adopt her interpretation of 49 C.F.R. § 37.21(c) based on her assertion that the Secretary of Transportation has agreed with her, and that we should defer to the Secretary's interpretation of his own regulation under *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (holding that an agency's interpretation of its own regulation is "controlling unless plainly erroneous or inconsistent with the regulation" (internal quotation marks omitted)).

**[10]** In a 2006 notice of proposed rulemaking, the Secretary purported to "clarify that . . . public transportation entities required to provide complementary paratransit service[ ] must make reasonable modifications to their policies and practices to ensure program accessibility." 71 Fed. Reg. at 9762. Although the Secretary acknowledged that "the DOT ADA regulations do not include language specifically requiring regulated parties to make reasonable modifications," he explained that the DOT, "when drafting 49 CFR part 37, *assumed* that § 37.21(c) would incorporate the DOJ provisions on this subject." *Id.* (emphasis added). However, the Secretary noted that because the *Melton* court had concluded otherwise, the Secretary "believe[d] that it would be useful to amend [the DOT] rules to clarify them."[11] *Id.*

It is now over three years later, and the Secretary has not finalized these proposed rules. However, a recent FTA letter

---

[11]To that end, the Secretary proposed adding a paragraph to sections 27.7 and 37.5, the general nondiscrimination regulations under the ADA and Rehabilitation Act, to impose a reasonable modification requirement. 71 Fed. Reg. 9762, 9767-68.

of finding reiterated the Secretary's position: "Although the requirement for public entities to make reasonable modifications in their policies and practices is not explicitly addressed in the DOT ADA regulations, it is included in DOJ regulations, which are incorporated by reference at 49 CFR § 37.21(c)." FTA Ltr. of Finding (Aug. 14, 2008) at 4.[12]

[11] We decline Boose's invitation to defer to the 2006 preamble and the 2008 letter of finding. As we have already explained, any interpretation of section 37.21(c) as incorporating DOJ regulations by reference is plainly erroneous. The regulation merely reminds public entities that another set of provisions "may" apply. It does not, as Boose contends, impose any additional substantive requirements. Because the Secretary's interpretation conflicts with the plain language of the regulation, it is not controlling under *Auer*.[13] "To defer to the agency's position would be to permit the agency, under the guise of interpreting a regulation, to create *de facto* a new regulation." *Christensen v. Harris County*, 529 U.S. 576, 588 (2000). We will not, under the guise of deference, engage in an end-run around notice-and-comment rulemaking. Until the Secretary formally promulgates the proposed regulations, Tri-Met is not required to follow them.

---

[12]This letter of finding does not appear to be publicly available but was included in Boose's reply brief. We granted her motion for judicial notice of the letter.

[13]That the DOT's interpretations are contained in informal statements such as a preamble and letter of finding does not vitiate the level of deference we accord it. *See Or. Paralyzed Veterans of Am. v. Regal Cinemas, Inc.*, 339 F.3d 1126, 1131 n.6 (9th Cir. 2003). Nor does the fact that the DOT has changed its views on reasonable modifications over the years present a "separate ground for disregarding [its] present interpretation," since the DOT's "recourse to notice-and-comment rulemaking in an attempt to codify its new interpretation" creates "no unfair surprise." *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 170-71 (2007).

## III

We recognize the importance of paratransit systems for disabled individuals like Barbara Boose. We are mindful, however, that the ADA requires only a "comparable" level of service, 42 U.S.C. § 12143(a), and the DOT regulations implementing the ADA "do not contemplate perfect service" for the disabled. *Midgett v. Tri-County Metro. Transp. Dist. of Oregon*, 254 F.3d 846, 849 (9th Cir. 2001). As the DOT has explained:

> Under the ADA, complementary paratransit is not intended to be a comprehensive system of transportation for individuals with disabilities. Another way of saying this is that the ADA does not attempt to meet all the transportation needs of individuals with disabilities. . . . [T]he ADA is intended simply to provide to individuals with disabilities the same mass transportation service opportunities everyone else gets, whether they be good, bad, or mediocre.

56 Fed. Reg. at 45,601.

[12] The Secretary of Transportation has the sole authority to "determin[e] the level of services" that paratransit systems must provide to be considered "comparable." 42 U.S.C. § 12143(c)(3); 49 C.F.R. § 37.121(b). Although the Secretary has apparently decided that paratransit systems should make reasonable modifications to be considered comparable, he has yet to issue the final rules that would impose such a requirement. Because TriMet is not currently required to consider Boose's requested modification, she cannot make out a prima facie case of discrimination under the ADA or the Rehabilitation Act.[14]

---

[14]In light of the foregoing, we need not consider TriMet's argument that its compliance with its paratransit plan, 42 U.S.C. § 12143(c)-(e), creates a safe harbor under the ADA.

Accordingly, the order of the district court granting summary judgment to TriMet is **AFFIRMED.**[15]

---

[15]The motions of the disability rights organizations and public transit entities for leave to file amicus curiae briefs are granted, and the briefs are ordered filed.