**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TRISH JOHNSON,
            *Plaintiff-Appellant,*

            v.

BOARD OF TRUSTEES OF THE
BOUNDARY COUNTY SCHOOL
DISTRICT NO. 101; DON BARTLING,
in his capacity as Superintendent
of the Boundary County School
District No. 101,
            *Defendants-Appellees.*

No. 10-35233

D.C. No.
2:09-cv-00061-BLW

OPINION

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, Chief District Judge, Presiding

Argued and Submitted
December 8, 2010—Seattle, Washington

Filed December 8, 2011

Before: Diarmuid F. O'Scannlain and Richard A. Paez,
Circuit Judges, and Virginia M. Kendall, District Judge.*

Opinion by Judge O'Scannlain;
Partial Concurrence and Partial Dissent by Judge Paez

---

*The Honorable Virginia M. Kendall, United States District Judge for
the Northern District of Illinois, sitting by designation.

20873

## COUNSEL

Jason Walta, National Education Association, Washington, D.C., argued the cause for the plaintiff-appellant and filed briefs. With him on the briefs were James M. Piotrowski and Marty Durand, Herzfeld & Piotrowski, Boise, Idaho; and John E. Rumel, Idaho Education Association, Boise, Idaho.

Bentley G. Stromberg, Clements, Brown & McNichols, P.A., Lewiston, Idaho, argued the cause for the defendants-appellees and filed a brief.

Dennis J. Dimsey, United States Department of Justice, Civil Rights Division, Washington, D.C., filed a brief on behalf of amici curiae the United States and United States Equal Employment Opportunity Commission. With him on the brief were Thomas E. Perez, Assistant Attorney General, Samuel R. Bagenstos, Principal Deputy Assistant Attorney General, and Roscoe Jones, Jr., Attorney, United States Department of Justice, Civil Rights Division, Appellate Division, Washington, D.C.; and P. David Lopez, General Counsel, Carolyn L. Wheeler, Acting Associate General Counsel, Lorraine C. Davis, Assistant General Counsel, and Anne Noel Occhialino, United States Equal Opportunity Commission, Office of General Counsel, Washington, D.C.

---

## OPINION

O'SCANNLAIN, Circuit Judge:

We must decide whether a disabled teacher is a "qualified individual with a disability" under the Americans with Disabilities Act.

### I

### A

Patricia ("Trish") Johnson, who had a history of depression and bipolar disorder, taught special education in the Boundary County School District No. 101 ("District") in Idaho for a decade. In May 2007, Johnson entered into a standard teaching contract with the District requiring her "to have and maintain the legal qualifications required to teach" special

education during the 2007-2008 school year. In Idaho, "[e]very person who is employed to serve in any elementary school or secondary school in the capacity of teacher . . . shall be required to have and to hold a certificate issued under authority of the state board of education." Idaho Code § 33-1201. The Idaho State Board of Education ("ISBE") issued Johnson a teaching certificate valid from September 1, 2002 to September 1, 2007. Hence, Johnson's teaching certificate was set to expire around the start of the 2007-2008 school year.

To renew her certificate, Johnson was required to complete at least six semester hours of professional development training, at least three of which had to be for college credit, during the five-year period that her certificate was valid. Idaho Admin. Code § 08.02.02.060.03. During this period, Johnson completed a number of courses toward renewal of her certificate; however, by the summer of 2007, she was still short the required three semester hours of college credit. According to Johnson, she had taken "much more than just three hours" of college-level courses by the start of the summer but had not received any credit because she never paid for the courses.

However, during that summer Johnson experienced a major depressive episode that rendered her unable to take any college courses. Shortly before classes resumed in the fall, Johnson met with the District Superintendent, Dr. Don Bartling, and explained that her certificate would soon expire because she had failed to complete the three college credits. Superintendent Bartling informed Johnson that she would need to petition the District's Board of Trustees ("Board") to apply for provisional authorization from the ISBE to teach without a certificate during the upcoming school year.

School districts in Idaho could apply for provisional authorization to hire teachers who lacked the appropriate certification by submitting a letter of request signed by the superintendent and chair of the board of trustees explaining

the need for provisional authorization, "outlining the 'good faith effort' the district made in attempting to hire someone with appropriate certification," and specifying the teacher's qualifications. Upon ISBE approval, the teacher would be allowed to teach for a nonrenewable one-year term.

Johnson appeared before the Board on September 6, 2007, and requested that the Board apply for provisional authorization for her to teach during the school year. The Board voted to deny the request. According to the Chairman of the Board, Melanie Staples, the reason for the denial was that Johnson "had five years to get those three credits and didn't approach administration until just before school started where her certificate was up." Staples testified that the Board applied for provisional authorizations only when there was an open position but no certificated teachers available. Because there were two certificated special education teachers available to teach in the District, one of them was hired to fill in for Johnson.

The Board mailed a notice of possible nonrenewal of Johnson's teaching contract for the 2007-2008 school year to Johnson on October 1, 2007. Two weeks later, the Board held a hearing to determine whether Johnson had violated the terms of her contract by allowing her teaching certification to lapse. Johnson was represented by counsel at the hearing and given the opportunity to testify and to present evidence. Johnson testified at length about her history of mental illness, as well as how her depressive episode during the summer of 2007 had prevented her from completing the required college credits. At the conclusion of the meeting, the Board decided to "stand on [its] previous decision" not to seek provisional authorization because of "Ms. Johnson's lack of action over the last five years." Consequently, Johnson was terminated, and the substitute teacher filling in for her was hired on a full-time basis.

B

On January 12, 2009, Johnson filed a complaint against the Board in state court alleging statutory and constitutional due

process violations, breach of contract, and disability discrimination in violation of the Idaho Human Rights Act ("IHRA"), Idaho Code § 67-5909; the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*; and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.* The Board removed the action to the district court, which entered summary judgment in the Board's favor. This timely appeal followed.

## II

The sole claims remaining on appeal are the disability-discrimination claims.[1] Johnson contends that the district court erred in concluding that she was not a "qualified individual with a disability" within the meaning of the ADA.

## A

**[1]** Title I of the ADA prohibits "discriminat[ion] against a qualified individual with a disability because of the disability of such individual in regard to . . . the hiring, advancement, or discharge of employees." 42 U.S.C. § 12112(a) (2007).[2] Thus, to prevail on her disability-discrimination claims, Johnson "first must show that she is a 'qualified individual with a disability.' "[3] *Fredenburg v. Contra Costa Cnty.*

---

[1]Johnson does not contest the district court's conclusion that her ADA claim is barred because she failed timely to file a charge with the Equal Employment Opportunity Commission. Hence, we consider only her Rehabilitation Act and IHRA claims, though we construe such claims as we would an ADA claim. *See Boose v. Tri-Cnty. Metro. Transp. Dist. of Or.*, 587 F.3d 997, 1001 n.5 (9th Cir. 2009); *Stansbury v. Blue Cross of Idaho Health Serv., Inc.*, 918 P.2d 266, 269 (Idaho 1996).

[2]The ADA was amended by the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553 (2008). Because the ADAAA's effective date is January 1, 2009, 122 Stat. at 3559, and because we have determined that the ADAAA lacks retroactive effect, *Beccerril v. Pima Cnty. Assessor's Office*, 587 F.3d 1162, 1164 (9th Cir. 2009) (per curiam), we rely on the version of the ADA in effect in 2007.

[3]For purposes of summary judgment, the Board does not contest that Johnson is disabled.

*Dep't of Health Servs.*, 172 F.3d 1176, 1178 (9th Cir. 1999). Moreover, she must show that she was "qualified" at the time of the alleged discrimination.[4] *See Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1112 (9th Cir. 2000).

**[2]** The ADA defines "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."[5] 42 U.S.C. § 12111(8). The Equal Employment Opportunity Commission ("EEOC"), the agency to which Congress delegated authority to implement Title I of the ADA, *see id.* § 12116, has promulgated a regulation expanding this definition, *see* Equal Employment Opportunity for Individuals with Disabilities, 56 Fed. Reg. 35,726, 35,735 (July 26, 1991). The EEOC regulation provides that a "qualified individual with a disability" is one "who satisfies the requisite skills, experience, education and other job-related requirements of the employment position such individual holds or desires, *and* who, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m) (emphasis added). We have previously adopted the EEOC's two-step inquiry as the test for whether an individual is qualified within the meaning of the ADA. *See Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 990 (9th Cir. 2007) (en banc).

B

The Board does not contest that Johnson was physically and mentally capable of performing the functions of a special

---

[4]Here, the discrimination alleged is the Board's refusal to apply for provisional authorization, i.e., "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A).

[5]The "essential functions" of a job are defined as the "fundamental job duties," not including "the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1).

education teacher at the time it denied her request for provisional authorization. The Board contends, however, that Johnson's lack of legal authorization to teach in Idaho rendered her unqualified pursuant to the first step of the two-step qualification inquiry. Johnson responds that we must consider reasonable accommodation in determining whether she satisfied the job prerequisites. Because Johnson *could have* obtained legal authorization to teach had the Board granted her request for accommodation, she contends that she met the first step.

**[3]** Initially, we note that the first step of the qualification inquiry, unlike the second step, contains no reference to reasonable accommodation. If the EEOC had intended to require employers to provide reasonable accommodation to ensure that disabled individuals can satisfy the job prerequisites, in addition to the essential job functions, it presumably could have said so in the regulation. That the EEOC declined to include any reference to reasonable accommodation in the first step suggests that such omission was deliberate. *See Fedorenko v. United States*, 449 U.S. 490, 512 (1981).

Our reading is supported by the EEOC's interpretive guidance on Title I ("Guidance"). In discussing the qualification inquiry, the Guidance explains that "[t]he first step is to determine if the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc." 29 C.F.R. Pt. 1630, App. to § 1630.2(m). Hence, "the first step in determining whether an accountant who is a paraplegic is qualified for a certified public accountant (CPA) position is to examine the individual's credentials to determine whether the individual is a licensed CPA." *Id.* Absent from this discussion is any mention of a requirement that the employer consider whether the individual *could* become a licensed CPA with reasonable accommodation.

**[4]** According to another section of the Guidance, "the obligation to make reasonable accommodation is owed only

to an individual with a disability who is qualified within the meaning of § 1630.2(m) in that he or she satisfies all the skill, experience, education and other job-related selection criteria." 29 C.F.R. Pt. 1630, App. to § 1630.9(a). The Guidance further provides that "[a]n individual with a disability is 'otherwise qualified' . . . if he or she is qualified for a job, except that, because of the disability, he or she needs a reasonable accommodation to be able to perform the job's essential functions." *Id.* Such statements make clear that unless a disabled individual independently satisfies the job prerequisites, she is not "otherwise qualified," and the employer is not obligated to furnish any reasonable accommodation that would enable her to perform the essential job functions.

The Guidance then provides the following example to illustrate when the duty of reasonable accommodation would be triggered:

> For example, if a law firm requires that all incoming lawyers have graduated from an accredited law school and have passed the bar examination, *the law firm need not provide an accommodation to an individual with a visual impairment who has not met these selection criteria.* That individual is not entitled to a reasonable accommodation because the individual is not "otherwise qualified" for the position.

> On the other hand, if the individual has graduated from an accredited law school and passed the bar examination, the individual would be "otherwise qualified." The law firm would thus be required to provide a reasonable accommodation, such as a machine that magnifies print, to enable the individual to perform the essential functions of the attorney position, unless the necessary accommodation would impose an undue hardship on the law firm.

*Id.* (emphasis added). Again, the Guidance explicitly disclaims any requirement of providing reasonable accommodation to disabled individuals who fail to meet the job prerequisites on their own.[6]

## C

The EEOC as amicus curiae points out that a different section of the Guidance provides that "selection criteria that are related to an essential function of the job may not be used to exclude an individual with a disability if that individual could satisfy the criteria *with the provision of a reasonable accommodation*." 29 C.F.R. Pt. 1630, App. to § 1630.10 (emphasis added). Thus, the EEOC asserts that reasonable accommodation must be considered under the first step of the qualification inquiry.[7]

The Guidance section cited by the EEOC pertains to challenges to "qualification standards, employment tests or other

---

[6]Johnson concedes that an individual who cannot satisfy the job prerequisites is generally not "qualified" under the first step of the qualification inquiry but contends that an exception exists "where the employer exercises significant control over an individual's ability to obtain job-related qualifications." We disagree. *See* EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act, No. 915.002 (Oct. 17, 2002), at 20 ("There is no obligation for the employer to assist the individual to become qualified. Thus, the employer does not have to provide training so that the employee acquires necessary skills to take a job." ); *see also Williams v. United Ins. Co. of Am.*, 253 F.3d 280, 282 (7th Cir. 2001) (holding that an employer is not required to provide a disabled individual "training that will equip her with the qualifications for the job . . . that at present she lacks").

[7]Our dissenting colleague suggests that we have not afforded sufficient deference to the EEOC's statutory and regulatory interpretations. We disagree. In fact, our conclusion rests on the EEOC's own regulation and interpretive guidance. *See supra*. We part ways on certain aspects of the EEOC's litigation position only to the extent that they are off point (as when the EEOC invokes guidance that is irrelevant on this record) or at odds with the plain text of the regulation and interpretive guidance.

selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities." *See* 42 U.S.C. § 12112(b)(6); 29 C.F.R. § 1630.10. We have previously observed, in the context of a challenge to an employer's "*facially discriminatory* qualification standard," that "it would make little sense to require an ADA plaintiff to show that he meets a qualification standard that he undisputedly *cannot* meet because of his disability and that forms the very basis of his discrimination challenge." *Bates*, 533 F.3d at 988, 990. If the employee succeeds in showing that the qualification standard "has the effect of discriminating on the basis of disability," the burden then shifts to the employer to show that "the qualification standard is (1) 'job-related,' (2) 'consistent with business necessity,' and (3) that 'performance cannot be accomplished by reasonable accommodation.' " *Id.* at 994-95 (quoting 42 U.S.C. § 12113(a)).

Here, however, Johnson does not challenge the Board's legal authorization requirement as a discriminatory job prerequisite. Rather, the basis for Johnson's discrimination claim is the Board's failure to accommodate her disability, which is analytically distinct from a claim of disparate treatment or impact under the ADA. *See McGary v. City of Portland*, 386 F.3d 1259, 1265-66 (9th Cir. 2004). Because Johnson does not allege, let alone show, that the Board's requirement was discriminatory in effect, the Guidance section pertaining to discriminatory qualification standards is inapposite.[8]

### III

**[5]** In sum, an individual who fails to satisfy the job prerequisites cannot be considered "qualified" within the meaning of the ADA unless she shows that the prerequisite is itself

---

[8]Accordingly, we reject Johnson's reliance on cases such as *Bates* and *Rohr v. Salt River Project Agricultural Improvement & Power District*, 555 F.3d 850 (9th Cir. 2009), both of which involved challenges to discriminatory qualification standards under 42 U.S.C. § 12112(b)(6).

discriminatory in effect. Otherwise, the default rule remains that "the obligation to make reasonable accommodation is owed only to an individual with a disability who . . . satisfies all the skill, experience, education and other job-related selection criteria." 29 C.F.R. Pt. 1630, App. to § 1630.9(a). Because Johnson does not allege that the Board's legal authorization requirement was itself discriminatory, her failure to satisfy such requirement rendered her unqualified, and the Board was not required to accommodate her disability.[9]

The judgment of the district court is

**AFFIRMED.**

---

PAEZ, Circuit Judge, concurring in part, dissenting in part:

I concur in the judgment and in Parts I and II(A) of the majority opinion. At the time of the alleged discrimination, Patricia Johnson did not possess the required certification to be employed as a special education teacher by the Boundary County School District (the "District"). The accommodation that she sought—provisional authorization for the District to hire an uncertified teacher—is an accommodation to a local school district wholly within the discretion of the Idaho State Board of Education. The District did not have the authority to grant provisional authorization, and therefore could not grant Johnson the accommodation she requested. The district court properly granted summary judgment to the District.

We therefore need not decide whether the Equal Employment Opportunity Commission ("EEOC") has properly interpreted its own regulation to include a duty of reasonable accommodation in the first step of the inquiry into whether a

---

[9]In light of our conclusion, we need not consider the Board's argument that the requested accommodation was unreasonable.

person is a "qualified individual" under the Americans with Disabilities Act ("ADA").[1] *See* 29 C.F.R. 1630.2(m) (interpreting 42 U.S.C. § 12111(8) of the ADA). The majority, however, proceeds to give its own interpretation of section 1630.2(m) and rejects the reasonable position of the EEOC. Because the majority does not afford the requisite deference due to the EEOC's interpretation of its own regulations, I cannot agree with Parts II(B), II(C), and III of Judge O'Scannlain's opinion.

## I.

At the heart of this appeal is the Idaho State Board of Education's procedure for a school district to obtain provisional authorization to hire an uncertified teacher. The Board of Education is vested with the authority to issue teaching certificates, which it delegates to the State Department of Education. Idaho Admin. Code 08.02.02.016. At the time Johnson requested a waiver of certification, the Board had created a procedure through which local school districts could obtain provisional authorization to hire uncertified teachers.[2] To apply for authorization, a school district is required to submit a letter with a statement explaining the need for the request, detailing the qualifications of the individual the district seeks to hire, and "outlining the 'good faith effort' the district made in attempting to hire someone with appropriate certification." The provisional authorization is valid for only one year, is

---

[1]Johnson's claim under the ADA was properly dismissed by the district court. This appeal concerns Johnson's claims under the Idaho Human Rights Act ("IHRA"), Idaho Code § 67-5909, and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* We analyze claims under the IHRA and Rehabilitation Act, however, as we would a claim under the ADA. *See Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999); *Stansbury v. Blue Cross of Idaho Health Serv., Inc.*, 918 P.2d 266, 269 (Idaho 1996).

[2]*See Idaho State Bd. of Educ. Summary of Alternative Authorization/Routes to Certification*, *available at* http://www.sde.idaho.gov/site/teacher_certification/alt_routes.htm.

non-renewable, and the teacher hired must obtain proper certification in order to continue teaching once the authorization expires.

The provisional authorization thus grants authority to a school district to fill a vacancy with an individual who does not possess the required state certification, but only after it has been unable to find a certified teacher, having made a good faith effort to do so. Presumably, a capable but uncertified teacher is in many cases better than no teacher at all. The Board's policy makes clear, however, that provisional authorization to hire an uncertified teacher is an accommodation of last resort to local school districts, not an accommodation to a teacher who does not possess the required certification. *See Idaho State Bd. of Educ. Summary of Alternative Authorization/Routes to Certification*, *available at* http://www.sde .idaho.gov/site/teacher_certification/alt_routes.htm ("[T]his authorization does not lead to certification, it is an emergency authorization available to school districts."). The authorization process is an exception to Idaho Code § 33-1201, which provides that "[e]very person who is employed to serve in any elementary school or secondary school in the capacity of teacher . . . shall be required to have and to hold a certificate issued under authority of the state board of education." Further, the authorization process does not provide a school district with the authority to waive the certification requirement by itself at the request of an uncertified teacher; only the Board may authorize provisional authorization.

In *Albertson's, Inc. v. Kirkingburg*, the Supreme Court held that an employer is not required under the ADA to accept a governmentally-approved waiver if the waiver regulation does not alter substantive licensing requirements. 527 U.S. 555, 577-78 (1999) (concluding that a trucking company did not violate the ADA when it terminated and refused to rehire a visually impaired driver for failing to meet Department of Transportation vision acuity standards even after the driver obtained a waiver from the Department). That is the case here.

The provisional authorization procedure is a limited exception to the state certification standards that Idaho public school teachers must satisfy. Although provisional authorization was potentially available, the District was not required to utilize the procedure to rehire Johnson.

This might be a different case if the District had created the certification requirement or if it had independent authority and discretion to waive the certification requirement so that it could rehire Johnson. Under the teacher certification scheme that Idaho has adopted, however, both of those responsibilities rest with the State Board of Education. Johnson therefore has no basis to complain that the District discriminated against her in violation of the IHRA and the Rehabilitation Act when it declined to seek provisional authorization from the state.

## II.

There is no need to reach the question—as the majority does in Parts II(B) and II(C) of the opinion—of whether the District had a duty under the ADA to apply for provisional authorization to rehire Johnson as a reasonable accommodation so that she could ultimately renew her certification. In its Amicus Brief, the EEOC contends that the "district court erred in failing to ask the controlling question in granting defendants' motion for summary judgment: whether the plaintiff would have been 'qualified' for her teaching position if she had received the waiver she sought." Here, the answer to the EEOC's question is clearly "No." As described above, the provisional authority, if granted, would have permitted the District to hire Johnson for one year *despite the fact that she did not possess the required state certification*. Even if the Board of Education had granted the District provisional authorization to hire Johnson, Johnson still would have lacked the certification required by section 33-1201.

Because Johnson's claim would fail even if we accepted the EEOC's formulation of the relevant legal question, I see

no need to opine on the persuasiveness of the EEOC's interpretation of its own regulation implementing the ADA. Yet not only does the majority opinion do so, it quarrels with the agency's interpretation of its own regulation without regard for the deference we must afford the EEOC. In *Auer v. Robbins*, the Supreme Court held that where a particular test "is a creature of the [agency]'s own regulations, [the agency's] interpretation of it is, under our jurisprudence, controlling unless plainly erroneous or inconsistent with the regulation." 519 U.S. 452, 461 (1997) (internal quotations omitted); *see also Kraus v. Presidio Trust Facilities Div./Residential Mgmt. Branch*, 572 F.3d 1039, 1045 (9th Cir. 2009) (deferring to EEOC's interpretation of its own regulation). The Court explained that such deference is due even where, as here, the agency's position is contained in an appellate brief, so long as the agency is not attempting to defend its own past actions. *Auer*, 519 U.S. at 462 ("There is simply no reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question.").

Here, the EEOC, as amicus curiae, argues that an employer has a duty to provide reasonable accommodation to a prospective employee if that accommodation would allow the person to become qualified for the position. The majority rejects the EEOC's position for three reasons. First, the majority argues that the first part of the two-part definition of "qualified" in 29 C.F.R. § 1630.2(m) contains no reference to reasonable accommodation. Maj. Op. at 20880. Second, the majority argues that the EEOC's interpretive guidance, contained in 29 C.F.R. pt. 1630, app. § 1630.2(m), "explicitly disclaims any requirement of providing reasonable accommodation to disabled individuals who fail to meet the job prerequisites on their own." Maj. Op. at 20883. Third, the majority argues that the EEOC's position is incorrect because it relies on inapplicable regulations and interpretive guidance governing only facially discriminatory selection criteria. Maj. Op. at 20883-84. None of these arguments show that the EEOC's interpretation of 29 C.F.R. § 1630.2(m) is "plainly erroneous

or inconsistent with the regulation" and does not reflect the agency's "fair and considered judgment." *Auer*, 519 U.S. at 461-62.

It is undisputed that the first part of the EEOC's "qualified individual" test, which asks whether a person "satisfies the requisite skills, experience, education and other job-related requirements of the employment position," does not contain a reference to reasonable accommodation. 29 C.F.R. § 1630.2(m); *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 990 (9th Cir. 2007) (en banc). The majority states that the EEOC "presumably" could have included a reference to reasonable accommodation and that its failure to do so "suggests that such omission was deliberate." Maj. Op. at 20881. The majority similarly argues that the interpretive guidance to that regulation, also silent as to any duty of reasonable accommodation in assisting an applicant to attain "the appropriate . . . licenses," 29 C.F.R. pt. 1630, app. § 1630.2(m), should be read to preclude a duty of reasonable accommodation. The majority's interpretation would not be an unreasonable reading of the regulation in a vacuum. There is no reason to rely on presumptions and inferences from omissions, however, because the EEOC has spoken through its Amicus Brief. *See Auer*, 519 U.S. at 462 (deferring to agency's position as stated in appellate brief to the Supreme Court). I see no reason in the context of this case to take issue with the EEOC's interpretation of section 1630.2.

We should avoid contradicting the EEOC when it interprets its own guidelines in a manner that is not plainly erroneous or inconsistent with the governing statute or regulation. The majority states that the EEOC's interpretive guidance for section 1630(a) "explicitly disclaims" any duty of reasonable accommodation to individuals who fail to meet the job prerequisites on their own. Maj. Op. at 20883. The majority points to an illustration provided by the EEOC concerning applicants to a law firm. In that example, the interpretive guidance states that a law firm has no duty to provide a rea-

sonable accommodation to an applicant who has not yet passed the bar, but must provide an accommodation to an applicant who has successfully passed the bar. 29 C.F.R. pt. 1630, app. § 1630.2(a). The majority interprets this example to mean that the law firm has no duty to provide a reasonable accommodation so that the applicant can become qualified for the position. This reads the EEOC's guidance too broadly.

The guidance merely states that the duty to provide a reasonable accommodation to an employee so that he can perform the *essential functions* of the job does not exist until the employee is otherwise qualified. 29 C.F.R. pt. 1630, app. § 1630.2(m). This does not preclude the existence of a duty to assist the employee in becoming otherwise qualified if such assistance is a "reasonable accommodation." Because these are separate questions, there is nothing in the guidance that "explicitly disclaims" the EEOC's reasonable position expressed in its Amicus Brief.

There is also no basis for the majority's suggestion that the ADA and the EEOC's regulation exclude a duty of reasonable accommodation to allow an applicant to meet qualification standards unless those standards are facially discriminatory. We have no doubt declared that 42 U.S.C. § 12112(b)(6), pertaining to "qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability," applies to standards that are facially discriminatory against disabled persons. *See Bates*, 511 F.3d at 989. There is nothing in our prior decisions, however, precluding the EEOC's position that section 12112(b)(6) can also be read to include facially neutral standards that "screen out an individual with a disability," especially when an appropriate waiver system is in place.

In sum, the EEOC's position expressed in its Amicus Brief is not plainly erroneous, irrational, or inconsistent with either the ADA or the EEOC's regulations and interpretive guidance. Although the rule the majority proposes in Part III of the

opinion is plausible, it is contrary to the reasonable view of the EEOC, and we ought to defer to the agency's reasonable position rather than attempt to give our own interpretation to the EEOC's regulation and the governing statute. Because I see no reason to reject the EEOC's position that employers have a duty to provide reasonable accommodation to disabled individuals who could satisfy job prerequisites with an accommodation, I would defer to that position. I therefore respectfully dissent from Parts II(B), II(C), and III. Nonetheless, because the District did not have the authority to grant Johnson a provisional waiver to the required state certification, I concur in the court's judgment.